**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANTRIM PHARMACEUTICALS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16 C 784 |
| | ) |
| BIO-PHARM, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER ON MOTIONS IN LIMINE

This case is set for trial on July 16, 2018, though as the Court has previously advised counsel, the date likely will have to be continued (probably to a date in August 2018). In this order, the Court rules, to the extent possible, on the parties' motions *in limine*. Matters left open by this order will be addressed at the final pretrial conference set for July 12, 2018.

**A. Bio-Pharm's motions**

**1. Testimony of Antrim's expert Sean Brynjelsen**

Bio-Pharm makes six arguments for preclusion of various aspects of the testimony of plaintiff's expert witness Sean Brynjelsen.

*Lost profits.* Brynjelsen rendered an opinion regarding Antrim's lost profits resulting from Bio-Pharm's failure to supply it with Escitalopram. Shortly after Brynjelsen issued his opinion, Antrim entered into an agreement with a new manufacturer. Bio-Pharm says that the terms of this deal undercut Brynjelsen's assumptions regarding the cost to replace Bio-Pharm as the manufacturer and what a

new manufacturer would charge, and that Brynjelsen's lost profits figure would result in a windfall for Antrim, because it will make actual profits via the new arrangement. These are appropriate points for cross-examination and argument that the jury should Brynjelsen's opinions little weight or should reduce his figures by some amount, but they are not a basis to exclude his testimony.

*Lost enterprise value.* Brynjelsen has also rendered an opinion that Bio-Pharm's breach impaired the value of Antrim's business. Bio-Pharm argues that this figure is wrong for the same reasons his lost profits figures are now wrong. This is essentially the same point just discussed; it may be a basis to discount the weight to be given to Brynjelsen's opinion, but it is not a basis to exclude the opinion. The bigger problem the Court has is the second issue raised by Bio-Pharm: Antrim has not identified any lost opportunity to sell itself.[1] Thus it does not appear that Brynjelsen's "lost enterprise value" represents any *actual*, and thus recoverable, damages resulting from the alleged breach. Unless Antrim can articulate at the final pretrial conference a viable factual and legal basis for recovery of lose enterprise value damages over and above lost profits, the Court will exclude this aspect of Brynjelsen's testimony (as well as the countervailing testimony by Bio-Pharm's expert).

*ANDA ownership.* Brynjelsen has an adequate basis from his extensive experience in the industry to testify that as the ANDA registrant, Antrim owns the ANDA. Bio-Pharm's real issue with Brynjelsen's testimony on this point seems to be the

---

[1] A separate, but related issue is that recovery of lost profits *and* damages for lost enterprise value almost certainly would involve a good deal of double-counting, as the impairment of the enterprise value consists in significant part of Antrim's inability to earn income from selling escitalopram manufactured by Bio-Pharm.

proposition that the fact of Antrim's ownership somehow makes it less likely that it would have promised Bio-Pharm an equity share, which is what Bio-Pharm contends took place. The Court does not see anything to this effect in Brynjelsen's report and does not see any appropriate basis for Brynjelsen to render such testimony. Bio-Pharm has separately moved to preclude argument along these lines, a point the Court will address later in this order.

*Bio-Pharm's role as contract manufacturer.* Brynjelsen has an appropriate basis to testify that a contract manufacturer is just that, a contract manufacturer. Again, the real issue seems to be whether, as a contract manufacturer, Bio-Pharm would somehow be precluded from acquiring an equity share in Antrim, the ANDA, or Antrim's venture. The Court sees nothing to this effect in Brynjelsen's report and does not see any appropriate basis for Brynjelsen to render such testimony. As discussed below with regard to the ANDA ownership issue, the Court will give Antrim an opportunity at the final pretrial conference to articulate the connection between these two points, but if it cannot articulate a viable theory, supported by admissible evidence, the Court will preclude Antrim from arguing that the one (status as a contract manufacturer) supports the other (unlikelihood/impossibility of a promise of an equity share).

*Amount of time it reasonable takes to obtain a "site change."* In his report, Brynjelsen says that "[b]ased on my experience," it would take at least two years to effectuate a "site transfer" or "site change," that is, a switch of the contract manufacturer for escitalopram. Def.'s Mots. In Limine, Ex. 1 (Brynjelsen report) at 4, 5. Other than the general citation to his experience, Brynjelsen does not describe the basis for this opinion. And at certain points in his deposition, he seems to agree with defense

3

counsel's characterization of this as an "assumption."  *See, e.g., id.*, Ex. 3 (Brynjelsen dep.) at 76, 77.  This general citation to Brynjelsen's experience is insufficient to establish that he has the necessary knowledge or experience, or the requisite data, to render this as an opinion.  *See* Fed. R. Evid. 702(a), (b).  The Court will exclude this testimony unless Antrim can show, at the final pretrial conference, an adequate basis for Brynjelsen to render this opinion.

*New business rule.*  The Court dealt with this issue in its summary judgment decision and reaffirms that ruling here.

### 2. ANDA ownership testimony and equivalence with equity ownership

The Court sees no basis to preclude testimony that the ANDA registrant is the owner of the ANDA, but the Court likewise sees no basis to support an argument that Antrim's ownership of the ANDA for Bio-Pharm somehow makes it less likely or impossible that Antrim promised Bio-Pharm an equity share (as Bio-Pharm contends).  Among other things, Antrim's expert Brynjelsen said no such thing in his written report or, it appears, in his deposition testimony.  The Court will give Antrim an opportunity at the final pretrial conference to articulate the equivalence between these two points, but if it cannot articulate a viable theory, supported by admissible evidence, the Court will preclude Antrim from arguing that the one (non-ownership of the ANDA) supports the other (unlikelihood/impossibility of a promise of an equity share).

### 3. Implied contract theory

Bio-Pharm asks the Court to bar Antrim from pursuing its breach of contract claim under an implied contract theory.  This is not actually a motion *in limine*; it is effectively a motion for summary judgment.  The Court denies the motion, as it already

4

concluded, in ruling on Bio-Pharm's summary judgment motion, that a reasonable jury could find an implied contract that Bio-Pharm breached. *Antrim Pharms. LLC v. Bio-Pharm, Inc.*, No. 16 C 784, 2018 WL 1875532, at *5-7 (N.D. Ill. Apr. 19, 2018).

**4. Evidence relating to unjust enrichment**

The Court granted summary judgment for Bio-Pharm on Antrim's unjust enrichment claim, concluding that no reasonable jury could find from the evidence cited by Antrim that Bio-Pharm was unjustly enriched by its alleged withholding and purported reselling of escitalopram. *Id.* at *10-11. Bio-Pharm asks the Court to bar Antrim from offering evidence supporting the dismissed claim. That is a no-brainer in the abstract; a party may not attempt to prove up a dismissed claim at trial. But the only evidence Bio-Pharm cites in its motion is evidence that Bio-Pharm unfairly profited from retaining the products or selling them elsewhere. Antrim argues that this evidence is relevant to support its defense of unclean hands on Bio-Pharm's counterclaim. Specifically, Antrim contends, this evidence bears on its contention that Bio-Pharm prevented Antrim from performing under the parties' alleged contract regarding the manufacture and sale of escitalopram on Antrim's behalf. The Court agrees and therefore denies Bio-Pharm's motion.

**5. Evidence regarding other products**

Bio-Pharm asks the Court to bar Antrim from introducing evidence regarding Bio-Pharm's activities concerning other products and entities unrelated to Antrim, for example, Lactulose and Dr. Reddy's. It contends this evidence is irrelevant. In response, Antrim has not articulated any theory of relevance regarding these otherwise unrelated transactions that would pass muster under Federal Rule of Evidence 404(b).

5

The Court grants Bio-Pharm's motion.

### 6. Evidence regarding Torrent agreement

The Court defers ruling on Bio-Pharm's motion to exclude evidence regarding its purchase agreement with Torrent Pharmaceuticals, Inc. This agreement is also the subject of a motion filed by Antrim in which it seeks to lift the attorney's-eyes-only designation for the agreement and a motion in which Antrim seeks to add new defendants to the case. The Court will hear further argument on these motions at the final pretrial conference on July 12.

## B. Antrim's motions

### 1. Testimony of Bio-Pharm's expert Mark Schwartz

*ANDA ownership.* Antrim contends that Bio-Pharm's expert witness Mark Schwartz is going to testify "that Antrim's undisputed status as the ANDA holder [for escitalopram] does not mean that Antrim 'owns' the ANDA under FDA rules." Pl.'s Mots. In Limine at 2. That does not appear to be an accurate characterization of Schwartz's opinion. Schwartz states in his report that "the only relationship that FDA would infer as a result of the applicant, Antrim, and the manufacturer, Bio-Pharm, being identified on the ANDA application is a contractual relationship for Bio-Pharm to manufacturer the drug at issue on behalf of Antrim. . . . FDA would not infer any ownership relationship one way or the other between the applicant and the manufacturer." *Id.*, Ex. 1 (Schwartz report) at 9-10. As described in the report, there is nothing inappropriate about Schwartz's opinion, and he possesses the necessary qualifications and knowledge to render it.

*Mitigation testimony.* Antrim asks the Court to bar Schwartz from testifying that it

6

should have taken Antrim only one year to effectuate a site change, i.e., a change in the manufacturer for its escitalopram. In this regard, the opinion in Schwartz's report is every bit as conclusory and unsupported as the countervailing opinion of Antrim's expert Brynjelsen. Schwartz does nothing more than attach a time frame to each step in the site change process, without any explanation how he comes up with it.[2] As with Brynjelsen's testimony on this point, the Court will exclude Schwartz's testimony unless Bio-Pharm can show, at the final pretrial conference, an adequate basis for him to render this opinion.

      **2.**      **Testimony of Bio-Pharm's expert witness Kayvon Namvar**

Antrim asks the Court to exclude the testimony of Bio-Pharm's damages expert Kayvon Namvar on three bases. First, Antrim says that Namvar's testimony is premised on Schwartz's allegedly inadmissible opinion that it should have taken Antrim only one year to effectuate a site change. Irrespective of the admissibility of Schwartz's testimony on how long the process should have taken, however, Namvar may appropriately render damages testimony based on a one-year *assumption*—and then it will be for the jury to decide how much weight to give his testimony if that assumption is not adequately supported. (The Court notes that the same is true of the damages testimony by Antrim's expert Brynjelsen. He will be able to give damages testimony based on his apparent two-year assumption even if the Court ultimately precludes him from rendering an opinion that two years is how long it reasonably should have taken

---

[2] It appears that for some steps, Schwartz relies on the deposition testimony of a representative of Antrim. That, however, does not require an expert. Bio-Pharm can elicit this testimony from the Antrim representative at trial and ask the jury to draw inferences accordingly.

Antrim to effectuate a site change.)

Second, Antrim argues that Namvar did not perform an adequate review of the evidence before offering his opinion. The Court does not find the flaws claimed by Antrim to be an appropriate basis to exclude his testimony. Rather, they are factors appropriately taken up on cross-examination and argument regarding the weight the jury should give Namvar's testimony.

Third, Antrim contends that Namvar does not have sufficient qualifications to testify about lost profits or lost enterprise value. Antrim's primary argument is that Namvar has not previously rendered an expert opinion in connection with a lawsuit. So what? There is no rule or caselaw supporting the proposition that prior service as an expert witness is a necessary qualification for testifying. Antrim's contention that Namvar is unqualified because he has never done a lost profits analysis of pharmaceutical companies is at least a facially plausible argument, but the fact is that Namvar has conducted similar analyses in the past, and Antrim cites nothing specialized about conducting this analysis in the pharmaceutical manufacturing context that would render Namvar's prior experience inadequate to support his testimony here.

### 3. Testimony about John Kapoor and other litigation

The Court grants Antrim's motion to bar testimony about John Kapoor, a passive investor in Antrim, and criminal charges involving Kapoor and his company Insys. In response, Bio-Pharm disavows any intention to introduce testimony or make arguments along these lines. The Court agrees that these subjects are irrelevant and would unfairly prejudice Antrim in a way that significantly outweighs any conceivable probative value. On a related note, though Bio-Pharm suggests that Kapoor's name may come

up at trial, this is not explained. Unless Kapoor participated in relevant events, the Court does not see why his name should be mentioned at all and thus sees no need to ask about this during voir dire of the jury venire, as the parties have proposed.

### 4. Cumulative mitigation evidence

Antrim asks the Court to bar Bio-Pharm from, in effect, overdoing its mitigation defense. The Court agrees with Antrim that mitigation is an affirmative defense on which Bio-Pharm bears the burden of proof; that this defense affects only damages, not liability; and that Antrim was required to use only reasonable efforts and ordinary care to avoid losses as a result of Bio-Pharm's breach. *See* Ill. Pattern Instruction (Civil) 700.17. And it is also true that, under Illinois law, "the duty to mitigate may not be invoked by one who has breached a contract as grounds for hypercritical examination of the injured party's conduct, or as evidence that the injured party might have taken steps which seemed wiser or would have been more advantageous to the breaching party." *RIV VIL, Inc. v. Tucker*, 979 F. Supp. 645, 660 (N.D. Ill. 1997) (internal quotation marks and citation omitted). But the Court cannot determine, on the relatively spare discussion of the evidence by Antrim in its motion, whether Bio-Pharm's presentation at trial necessarily will cross this line. This is a matter better addressed at trial by objections to specific lines of questioning or argument; at that point, the Court will have the necessary context. Bio-Pharm should be cognizant, during its presentation of this aspect of the case, of the requirements of Federal Rule of Evidence 403.

### 5. "New evidence on previously undisclosed theories"

Antrim contends that it believes that Bio-Pharm is going to defend the case on a theory different from the one on which it argued the case during the summary judgment

9

process or discovery. But Antrim cites nothing in which Bio-Pharm made any commitment that might be argued to be a legally binding undertaking to defend the case on a particular theory—such as, for example, a response to a contention interrogatory, or contrary allegations in Antrim's answer, affirmative defenses, or counterclaim. The Court overrules Antrim's motion. If Bio-Pharm elicits testimony from its witnesses that varies from their deposition testimony or allegations in the pleadings, Antrim may impeach them accordingly, and if Bio-Pharm attempts to introduce evidence that falls outside its Rule 26(a)(1) or Rule 26(a)(2) disclosures, Antrim may ask the Court to exclude it.

    **6.    Antrim's proposed ANDA jury instruction**

Consideration of Antrim's proposed ANDA jury instruction—both as to the need for an instruction on this point and the accuracy of the particular instruction proposed—is deferred until the Court deals with jury instructions.

Date: July 7, 2018

                                            _____
                                                  MATTHEW F. KENNELLY
                                                  United States District Judge